UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALFREDO PARADA CALDERON,<br><br>               Petitioner,<br><br>    v.<br><br>DREW BOSTOCK, et al.,<br><br>               Respondents. | CASE NO. 2:24-cv-01619-MJP-GJL<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION IN PART |

**INTRODUCTION**

This matter comes before the Court on the Report and Recommendation of Magistrate Judge Grady Leupold. (Dkt. No. 14 ("R&R").) Having reviewed the R&R, Respondents' Objections to the R&R (Dkt. No. 15), Petitioner's Objections to the R&R (Dkt. No. 16), and all supporting materials, the Court ADOPTS in part and DECLINES TO ADOPT in part the R&R.

**BACKGROUND**

Petitioner Alfredo Parada Calderon is a native and citizen of El Salvador who became a lawful permanent resident of the United States in 1990. (Declaration of George Chavez (Dkt. No.

9) ¶ 3.) On April 29, 1992, following a jury trial in the California Superior Court, County of Los Angeles, Petitioner was convicted of one count of murder and three counts of attempted murder. (Declaration of Michelle Lambert (Dkt. 10), Ex. B (People v. Parada, Case No. BA024449 (Cal. Super. Ct.).) In December 1992, Petitioner was sentenced to a term of imprisonment of 34 years and 8 months to life. (Id. at 13.)

On October 5, 2023, Petitioner was released on parole and transferred immediately to the custody of U.S. Immigration and Customs Enforcement ("ICE") and confined at the Golden State Annex ("GSA") detention facility located in McFarland, California. (Chavez Decl. ¶ 6.) On that same day, the Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA") charging Petitioner as removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for his convictions of an aggravated felony and an attempted aggravated felony. (Id. ¶¶ 7, 8; Lambert Decl., Ex. E.)

On November 1, 2023, an Immigration Judge ("IJ") sustained the charges of removability. (Chavez Decl. ¶ 10.) Petitioner then filed for relief from removal with an IJ in Adelanto, California. (Id. ¶¶ 11–12.) The IJ ordered Petitioner removed to El Salvador on February 7, 2024. (Id. ¶ 13.) On February 15, 2024, Petitioner appealed the removal order to the Board of Immigration Appeals ("BIA"). (Id. ¶ 14.) The briefing deadline established by the BIA for all parties was March 25, 2024. (Id. ¶ 15.) After Petitioner's counsel requested and received one extension, Petitioner filed a brief on April 15, 2024; DHS did not file a brief. (Id. ¶¶ 16–17.) On June 20, 2024, the BIA issued a decision remanding the matter to the IJ to make additional findings of fact. (Id. ¶ 18.) On June 27, 2024, the IJ again ordered Petitioner removed to El Salvador. (Id. ¶ 19.) On July 10, 2024, Petitioner appealed the IJ's order to the BIA. (Declaration

1 | of Sydney Maltese (Dkt. No. 2) Ex. F.) The BIA then issued a briefing schedule with a deadline
2 | of August 29, 2024, for all parties. (Chavez Decl. ¶ 22.)

3 |       With his case still pending, in August 2024, Petitioner and multiple other detainees
4 | participated in a hunger strike at GSA. (Chavez Decl. ¶ 21.) On August 20, 2024, Petitioner was
5 | transferred to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, a
6 | facility with appropriate medical facilities to treat a detainee on a hunger strike. (Id. ¶ 23.)
7 | Petitioner's counsel proceeded with his case during this time and requested a briefing extension
8 | with the BIA. (Id. ¶ 25.) The BIA granted the request and set a new deadline of September 19,
9 | 2024. Id. Petitioner's counsel submitted a brief on September 19, 2024; DHS did not file a brief.
10 | (Id. ¶ 27.)

11 |       On November 7, 2024, the Office of Enforcement and Removal Operations ("ERO")
12 | received a request from Petitioner's counsel to have him transferred back to GSA. (Chavez Decl.
13 | ¶ 28.) ERO approved the transfer on November 8, 2024, and Petitioner left NWIPC on
14 | November 12, 2024, and was booked into GSA on November 19, 2024. (Id. ¶¶ 29–30.)

15 |       On November 22, 2024, the BIA dismissed Petitioner's appeal. (Chavez Decl. ¶ 31.) On
16 | that same day, Petitioner filed a Petition for Review ("PFR") with the Ninth Circuit Court of
17 | Appeals. (Id. ¶ 31.) That petition is currently pending review. See Calderon v. Bondi, No. 24-
18 | 7072 (9th Cir. Nov. 22, 2024)).

19 |       Petitioner initiated his habeas action on October 7, 2024, while he was detained at
20 | NWIPC. (Dkt. No. 1.) On October 28, 2024, Magistrate Judge Leupold entered an order
21 | directing Respondents to show cause why the court should not grant habeas relief. (Dkt. No. 7.)
22 | Respondents filed their Return combined with a motion seeking dismissal of the petition, or, in
23 |
24 |

the alternative, seeking transfer of the matter to the Eastern District of California due to Petitioner's ongoing detention at GSA. (Dkt. No. 8.)

On January 1, 2025, Magistrate Judge Leupold issued a Report and Recommendation ("R&R") recommending the Court (1) deny Respondents' motion to dismiss; and (2) grant Petitioner's request for a bond hearing. (Dkt. No. 14.) Both Petitioner and Respondents filed timely Objections to the R&R. (See Respondents' Objections (Dkt. No. 15); Petitioner's Objections (Dkt. No. 16).)

## ANALYSIS

Because both Parties have issued timely Objections to the R&R, the Court will address them in order below.

### A. Respondents' Objections (Dkt. No. 15.)

Respondents object to the R&R on two grounds: (1) that the R&R did not appropriately weigh Petitioner's criminal history and criminal sentence when determining whether Petitioner's prolonged detention violated the Due Process Clause; and (2) that the R&R incorrectly requires Respondents, not Petitioner, to bear the burden of proof at Petitioner's bond hearing. The Court analyzes both in turn.

#### 1. **Martinez** Factors

Respondents claim that the R&R erred by not correctly weighing Petitioner's criminal history and criminal sentence in determining whether Petitioner's prolonged detention violated the Due Process Clause. The Court disagrees and ADOPTS the R&R as it relates to the analysis of those factors.

Where a § 1226(c) detainee has not received a prior bond hearing, courts in this district apply a "multi-factor analysis that many other courts have relied upon to determine whether §

1226(c) detention has become unreasonable." Martinez v. Clark, No. 2:18-cv-1669-RAJ-MAT, 2019 WL 5968089, at *6–7 (W.D. Wash. May 23, 2019), report and recommendation adopted, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019). Known as the Martinez test, courts weigh the following factors in assessing the reasonability of detention:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.
> Id. at *7.

Magistrate Judge Leupold found that two factors—the first and second—weighed in favor of Petitioner, while two factors—the third and fourth—weighed in favor of Respondents. (R&R at 14.) He found the remaining factors to be neutral. (Id.) The R&R correctly notes that the first factor—length of detention—is the "most important factor of the analysis." (Id. at 9–10 (collecting cases).) On that basis, the R&R determined that Petitioner's prolonged detention violated the Due Process Clause and recommended that this Court order a bond hearing. (Id. at 14.)

Respondents argue that the R&R did not place enough weight on the third and fourth Martinez factors. (Resps.' Objs. at 5–6.) According to Respondents, the "most important factor" in determining whether Petitioner's detention was unconstitutionally prolonged should be that he "is a convicted murderer who was sentenced to almost 35 years in prison." (Id. at 5.) However, Respondents also "acknowledge that the Martinez test weighs the first factor as the most important factor." (Id.) The latter concession is not only a correct statement of law but undermines Respondents' assertions to the contrary. The Court finds that the R&R did not err in its weighing of the Martinez factors, accorded the proper weight to various factors including the

first and most important factor. On that basis, the Court OVERRULES Respondents' Objections regarding the proper weighing of third and fourth Martinez factors and ADOPTS the R&R's findings as to the same.

**2. Burden of Proof at Bond Hearing**

Respondents next argue that the R&R erred by finding that at Petitioner's bond hearing, the Respondents "bear[] the burden of proving the detainee is a danger or flight risk by clear and convincing evidence." (Resps.' Objs. at 6-8 (citing R&R at 14–16).) Specifically, Respondents argue that it is Petitioner who bears the burden of proof at the individualized bond hearing. (Resps.' Objs. at 6–8.) The Court disagrees.

Respondents claim that R&R incorrectly relied on Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011), in determining that the burden be placed on ICE. (Resps.' Objs. at 7.) Respondents correctly point out that in the wake of Jennings v. Rodriguez, 583 U.S. 281 (2018), it remains an "open question" in the Circuit as to whether Singh's reasoning regarding the constitutional rights of § 1226(c) detainees is still good law. However, in the recently-decided Martinez v. Clark, 124 F.4th 775, 785–86 (9th Cir. 2024), the Ninth Circuit affirmed that in an immigration bond hearing it is the government, not the petitioner, who bears the burden of proof under the clear and convincing evidence standard. The Court sees no reason to break from the analysis used by the Martinez panel and other courts in this Circuit. Accordingly, the Court OVERRULES Respondents' Objections regarding the burden of proof and ADOPTS the R&R as to the same. At Petitioner's bond hearing, Respondents shall bear the burden of proof to show that Petitioner is a danger or flight risk by clear and convincing evidence.

**B. Petitioner's Objections (Dkt. No. 16.)**

Despite largely prevailing, Petitioner also issues Objections to the R&R on two points: (1) that the R&R should have used a different balancing test in determining the due process violation; and (2) that one Martinez factor should have weighed in favor of Petitioner. The Court analyzes both Objections in turn.

### 1. Banda vs. Martinez Test

Petitioner argues that the R&R should have employed the six-factor test from Banda v. McAleenan, 385 F.Supp.3d 1009, 1106 (W.D. Wash. 2019), rather than the Martinez test. According to Petitioner, Banda correctly excludes his criminal history and sentence from the due process analysis because those factors are necessarily incorporated into the bond hearing. (Pet.'s Objs. at 2–3.) The Court disagrees. Courts in this district presented with the same argument have found that "consideration of criminal history has solid grounding in case law." See Reyes v. Wolf, No. C20-0377-JLR-MAT, 2020 WL 6820903, at *5 (W.D. Wash. Aug. 7, 2020) (collecting cases), report and recommendation adopted as modified, No. C20-0377JLR, 2020 WL 6820822 (W.D. Wash. Nov. 20, 2020). Similarly, when assessing the length of detention factor, courts have found that "a comparison between the length of civil and criminal detention informs whether prolonged mandatory immigration detention has become unreasonable." Id. The Court does not find that the R&R's reliance on the Martinez factors rather than the Banda factors to be an error. Therefore, the Court OVERRULES Petitioner's Objections and ADOPTS the R&R's use of the Martinez factors.

### 2. Conditions of Detention at GSA

Petitioner next argues that the R&R erred by disregarding a document describing the conditions faced by detainees at GSA when analyzing the fifth Martinez factor. (Pet.'s Objs. at 3–4 (citing R&R at 14).) Specifically, Petitioner claims that the Declaration of Priya Patel (Dkt.

No. 12) is uncontested evidence regarding "conditions at GSA – the very place where [Petitioner] is detained," and that there is no reason why such evidence must come from Petitioner's personal knowledge. (Pet.'s Objs. at 3.) The Court agrees.

The fifth Martinez factor requires the court to assess "the conditions of detention." 2019 WL 5968089, at *7. Martinez elaborates on the factor, noting that "the Court considers the conditions of the detention facility where the petitioner is detained," and "[t]he more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." Martinez, 2019 WL 5968089, at *9 (alterations in original) (citing first Jamal A. v. Whitaker, 358 F. Supp. 3d 853, 860 (D. Minn. 2019), and then Bolus A. D. v. Sec'y of Homeland Sec., 376 F. Supp. 3d 959, 962 (D. Minn. 2019)).

The Court interprets Martinez as requiring evidence that speaks to the conditions of the detention facility itself. The Court sees no reason why such evidence should be restricted solely to firsthand accounts made by the Petitioner. Other courts in this district have acted accordingly. In Katlong v. Barr, No. C20-0846-RSL-MAT, 2020 WL 7048530, at *4 (W.D. Wash. Oct. 30, 2020), report and recommendation adopted, No. C20-0846-RSL-MAT, 2020 WL 7043580 (W.D. Wash. Dec. 1, 2020), the court found that conditions of detention factor weighed in favor of the petitioner solely on the weight of non-testimonial evidence. Here, Petitioner provided the Patel Declaration, which describes GSA as a former prison that was then reopened as an ICE detention facility. (Patel Declaration ¶ 4.) Patel, an attorney who has visited GSA and represented GSA detainees, further attests to the penal-like nature of the facility, noting the lack of privacy, programming, and health and safety considerations faced by GSA detainees such as Petitioner. (Id. ¶¶ 18–24.)

While Petitioner provides no personal knowledge evidence regarding his confinement at GSA, he has provided (1) testimony regarding his confinement while detained at NWIPC, and (2) testimony demonstrating that conditions at GSA, his current place of detention, resemble penal confinement. The Court concludes that this is enough to show that the fifth Martinez factor should weigh in Petitioner's favor. Accordingly, the Court DECLINES TO ADOPT the R&R as to the fifth Martinez factor.

**C. Adding GSA Warden**

Because Petitioner is currently detained at GSA, Petitioner must add the GSA Facility Administrator as a proper respondent to the Action before the Court may Petitioner's individualized bond hearing. See Doe v. Garland, 109 F.4th 1188, 1194–97 (9th Cir. 2024) (holding that the proper respondent in an immigration habeas petition is the individual directly in charge of the detention facility where the petitioner is detained). Respondents do not object to the addition of the GSA Facility Administrator. (Resps.' Objs. at 9.)

Petitioner is therefore ORDERED to add the GSA Facility Administrator as a Respondent to this action. Upon doing so, Respondents will have 30 days in which to provide Petitioner an individualized bond hearing that comports with the procedural requirements outlined in Singh.

## CONCLUSION

The Court ADOPTS in part and DECLINES TO ADOPT in part the Report and Recommendation. The Court ADOPTS the R&R's conclusion as to Petitioner's prolonged detention requiring an individualized bond hearing. The Court further ADOPTS the R&R's conclusion that at the bond hearing, Respondents shall bear the burden of proof to show that Petitioner is a danger or flight risk by clear and convincing evidence.

1    Additionally, the Court DECLINES TO ADOPT the R&R's recommendation as to the

2 fifth Martinez factor. The Court finds that Petitioner presented sufficient evidence to show that

3 the conditions of detention at GSA weighed in favor of a bond hearing.

4    The Court otherwise ADOPTS the R&R. Respondents' motion to dismiss is DENIED

5 and the Petition in GRANTED. Within 30 days of the addition of the GSA Facility Administrator

6 as a respondent in this action, Petitioner shall be given an individualized bond hearing.

7    The clerk is ordered to provide copies of this order to Magistrate Judge Leupold and to all

8 counsel.

9    The clerk is ordered to provide copies of this order to all counsel.

10   Dated March 21, 2025.

*[signature]*

Marsha J. Pechman
United States Senior District Judge